S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**STACIE F. BECKERMAN**, OSB #06923
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
E-mail: Stacie.Beckerman@usdoj.gov
      Attorneys for the United States

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:13-cr-0041-MO |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ANTHONY DENNELL ARMSTRONG,** | |
| **Defendant.** | Sentencing Hearing:<br>December 5, 2013, at 11:45 a.m. |

      The United States of America, by and through S. Amanda Marshall, United States Attorney for the District of Oregon, and Stacie F. Beckerman, Assistant United States Attorney, hereby respectfully submits this sentencing memorandum for the Court's consideration.

      Defendant is a violent sex trafficker who sold a young girl for sex for four years, beginning when she was just 14 years old. He kept her under his control through force and manipulation. He punched her with closed fists when he did not get his way, and punished her in a myriad of other ways when she did not make him enough money. Sex trafficking is a horrific crime, especially here where it was fueled by control, pitiless cruelty, and unrelenting violence.

The government respectfully asks the Court to sentence defendant to serve 210 months in prison, which is a small price for this defendant to pay compared to the years of trauma and abuse he inflicted upon the victim in this case.   Her wounds will last a lifetime.

I.     BACKGROUND

   A.     *Factual Background*

Defendant, then an 18-year-old drug dealer who called himself "Priceless," met a 14-year-old girl at a party.   Within 24 hours, he was recruiting her to work for him as a prostitute.   She had fallen for him, and he exploited her feelings, her young age, and her naiveté to convert her into someone she never could have imagined she would be.

Defendant first delivered the victim to a "trick house" in Portland.   The victim remembers her first "trick" because it was Valentine's Day, and she thought maybe defendant would love her more when she handed over the money she had earned that day from having sex with several strangers.   Defendant took the money, all of it, but told her he does not celebrate Valentine's Day.   The victim will never forget that day.

Defendant imposed a quota for the victim.   In those early days, she had to earn $300 per day before she could return to him.   While other 14-year-old girls in Portland were playing soccer or shopping with friends at the mall, the victim was having sex with strangers for money, usually at a trick house to avoid having to walk Portland's "track."

Within a few months, defendant began transporting the victim out of Oregon to earn money for him in other cities: among them, Phoenix, San Diego, Los Angeles, and Las Vegas. They spent the most time in Phoenix, where the victim worked the streets and the "track" and recalls making up to $500 per night for defendant.

It was in Phoenix where the victim experienced the most horrific of risks that every prostitute faces every time she shuts a car door or a hotel room door. The crime she suffered is set forth in detail in the Pre-Sentence Report, and the government will not repeat those facts in this public forum. When defendant learned what had happened, he did not comfort or console her or take her to the emergency room or to police. On the contrary, he sent her back out to work again. Tragically, she suffered the same crime again that very night.

The violence in the victim's life did not come only at the hands of strangers. "He got used to putting his hands on me," said the victim. After some time together, defendant felt the need to beat the victim to continue to exert his control over her. She recalls the first beating. She was jealous about another girl, and she talked back to defendant. He dragged her by her hair to the bathroom, turned on the water, and he beat her.

Defendant beat her for many reasons over the years, including when she did not make him enough money or when she did not want to "work." A witness who knew the victim in Phoenix reported that defendant beat the victim all the time, and that the victim always had bruises on her body. The victim reported that defendant would punch her body with a closed fist, but would use his open hand when he hit her in the face so that the injury would not be visible. However, sometimes defendant broke his own rules, like

**GOVERNMENT'S SENTENCING MEMORANDUM/*ARMSTRONG***        **PAGE 3**

when he punched the victim in the nose in Las Vegas when she asked him where he had been. She left Las Vegas that day, but immediately returned upon his request.

The victim recalls that the worst beating happened in Los Angeles, where defendant held her up against a wall and choked her, leaving a hand print on her neck for days.

Defendant also controlled the victim through manipulation. Perhaps the cruelest example is when the victim became jealous because defendant slept with another prostitute. Defendant responded by telling her that he would sleep with whichever girl made him the most money. Another time when the victim was questioned by police, defendant put her on "punishment," which meant she was not allowed to stay with defendant, but instead had to work day and night.

Despite the trauma bonding that kept her with defendant all those years, the victim finally found the courage to leave him when she was 18 years old. In the midst of punching and kicking the victim that day and throwing her on a bed, defendant missed and hit her young son instead. On that day, the victim finally left defendant for good.

### B.    *Case Proceedings*

Defendant pled guilty to one count of transporting a child for prostitution, in violation of 18 U.S.C. § 2423, which requires a 10-year mandatory minimum sentence. The government has agreed to dismiss the other counts in the indictment: sex trafficking by force and coercion (which would have required a 15-year mandatory minimum sentence), and sex trafficking of a child (which would have required a 10-year mandatory minimum sentence).

## II.  GUIDELINES CALCULATION

The parties have stipulated to the following guidelines calculation:

| | |
|---|---|
| Base offense level: | 28 |
| Undue influence: | +2 |
| Commission of a sex act: | +2 |
| Acceptance of responsibility: | -3 |
| Pattern of activity: | +5 |
| | = 34 |

The Probation Office has also applied an enhancement for obstruction of justice, on the ground that defendant called the victim several times in violation of his pre-trial release conditions, and attempted to convince her not to testify at his trial.  The government determined that it could not meet its burden of proof related to this enhancement unless it called the victim to testify about what defendant said to her during their telephone conversations.  The government agreed not to advocate for the obstruction enhancement to spare the victim from being cross-examined by her trafficker.

The parties stipulated to an offense level of 34, as set forth above.  The parties anticipated – incorrectly – that defendant's criminal history category would be CHC II. Accordingly, the parties stipulated to a sentencing guideline range of 168-210 months (OL 34, CHC II).  Without the obstruction enhancement, the Probation Office's guidelines calculation is 188-235 months (OL 34, CHC III).

### III.     SENTENCING RECOMMENDATION

####   A.     *The Sentence*

The Court will sentence the defendant for one count of transporting the victim to Phoenix to work as a prostitute in 2007, when she was still a child.   Defendant faces a mandatory 10-year sentence for just that one trip.   The Court's sentence should also address defendant's relevant conduct: sex trafficking of a child, sex trafficking by force, and unforgiveable domestic violence, all continuing for more than four years.

The government respectfully recommends that the Court sentence defendant to 210 years (17.5 years) imprisonment, to be followed by 10 years of supervised release.   The recommended sentence is within the guidelines range stipulated by the parties, and within the guidelines range calculated by the Probation Office (without the obstruction enhancement).   Any departure or variance from the guidelines in this case would be a disgrace.

The Court has sentenced a child sex trafficker to twice the amount of prison time the government seeks here.   *See, e.g., United States v. James Albert Jackson*, Case No. 3:09-cr-170-MO (40-year sentence for career offender).   Just last week, the Honorable Anna J. Brown sentenced a non-violent sex trafficker to 25 years in prison.   *See United States v. Christopher Cool Wilmer*, Case No. 3:12-cr-0107-BR (also a career offender). Although the sentence recommended by the government here is much lower than in these other child sex trafficking cases, the defendant in this case accepted responsibility early, and the plea agreement spared the victim from what would have been a very painful trial.

### B.     The Reasons

Congress and the United States Sentencing Commission have ranked sex trafficking of children among the worst crimes, and rightly so. Here, defendant controlled his young victim by brute force and manipulation, causing her physical and emotional pain that resulted in at least two attempts to harm herself. No human being should ever have to experience the cruel and unrelenting horror defendant inflicted upon this young girl night after night. The victim plans to address the Court at the sentencing hearing, and the government will defer to her to explain in her own words the impact defendant's crimes have had on her life.

Defendant's acts reflect a depraved heart that may be incapable of rehabilitation. As a result, a lengthy sentence is necessary to protect the public, so that defendant cannot exploit – or put his hands on – any other woman. A long sentence will afford appropriate punishment, and should also deter traffickers and would-be traffickers from exploiting young girls in our community for their own selfish profit.

Our justice system cannot adequately compensate the victim in this case. There is no quantifiable amount of money we can pay her for her years of suffering. We cannot "fix" what has been broken inside of her, we cannot return her teenage years to her, and we cannot erase her memories. Today, all that we can give her is justice.

/////

/////

/////

/////

### B.     The Reasons

Congress and the United States Sentencing Commission have ranked sex trafficking of children among the worst crimes, and rightly so.   Here, defendant controlled his young victim by brute force and manipulation, causing her physical and emotional pain that resulted in at least two attempts to harm herself.   No human being should ever have to experience the cruel and unrelenting horror defendant inflicted upon this young girl night after night.   The victim plans to address the Court at the sentencing hearing, and the government will defer to her to explain in her own words the impact defendant's crimes have had on her life.

Defendant's acts reflect a depraved heart that may be incapable of rehabilitation. As a result, a lengthy sentence is necessary to protect the public, so that defendant cannot exploit – or put his hands on – any other woman.   A long sentence will afford appropriate punishment, and should also deter traffickers and would-be traffickers from exploiting young girls in our community for their own selfish profit.

Our justice system cannot adequately compensate the victim in this case.   There is no quantifiable amount of money we can pay her for her years of suffering.   We cannot "fix" what has been broken inside of her, we cannot return her teenage years to her, and we cannot erase her memories.   Today, all that we can give her is justice.

/////

/////

/////

/////

## IV. CONCLUSION

For all of the reasons set forth herein, the government respectfully recommends that the Court sentence defendant to 210 months in prison, followed by a ten-year term of supervised release.

Respectfully submitted this 26th day of November 2013.

>S. AMANDA MARSHALL
>United States Attorney
>District of Oregon
>/s/ *Stacie F. Beckerman*
>STACIE F. BECKERMAN
>Assistant United States Attorney